UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAVONNE BAKER,<br><br>    Plaintiff,<br><br>v.<br><br>SANTA CLARA UNIVERSITY,<br><br>    Defendant. | Case No. 5:17-cv-02213-EJD<br><br>**ORDER DENYING MOTION FOR LEAVE TO AMEND COMPLAINT**<br><br>Dkt. 47 |

## I. INTRODUCTION

Plaintiff Lavonne Baker ("Plaintiff") initiated this suit against Defendant Santa Clara University ("Defendant") in April of 2017, asserting claims for gender and race discrimination, discrimination on the basis of disability, failure to accommodate, failure to initiate the interactive process to determine effective reasonable accommodations, and retaliation. Plaintiff seeks leave to amend the complaint to add allegations and claims for racial harassment and gender-based harassment. The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, Plaintiff's motion is denied.

## II. BACKGROUND

Plaintiff's Complaint includes the following allegations. Starting in 2008, Defendant has employed Plaintiff in the Department of Campus Safety as a Campus Safety Officer and later as Assistant Watch Commander. Complaint at ¶ 11. Since 2013, Defendant has failed to promote Plaintiff and has subjected her to "gender-based discrimination and harassment and race-based discrimination and harassment." Id. Plaintiff filed workplace complaints with Director Phil

Case No.: 5:17-cv-02213-EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND COMPLAINT
1

Beltran ("Beltran") regarding gender discrimination committed by Assistant Director Mark Bersch ("Bersch"). According to Plaintiff, Defendant failed to follow campus policies in responding to Plaintiff's workplace complaints. Id. Plaintiff's workplace complaints have led to ongoing harassment, discrimination and retaliation. Id. at ¶12.

Defendant represented to Plaintiff that it hired a third-party to investigate her workplace complaints. Id. at ¶ 13. The investigator reached conclusions that were presumably unfavorable to Plaintiff. Plaintiff appealed the investigator's conclusions and the Defendant "cursorily dismissed" the appeal. Id.

Defendant also failed to promote Plaintiff to Acting Watch Commander; failed to interview Plaintiff for the position of Transportation Services Manager; and failed to promote Plaintiff to Watch Commander. Id. at ¶ 14. In each instance, Defendant hired a less-qualified male. Id.

In addition, "Assistant Director Bersch made race-based comments describing Plaintiff as 'innately aggressive,' needing to smile more, and looking mean and angry." Id. at ¶ 15. Plaintiff's co-workers also made race-based comments. Id.

Further, Defendant failed to accommodate Plaintiff during her pregnancy. More specifically, Defendant denied Plaintiff breaks she needed to regulate her blood sugar level; denied Plaintiff a promotion to Watch Commander in 2015 because of her pregnancy status and upcoming maternity leave; failed to initiate a good faith interactive process with respect to the scope of her pregnancy-related needs. Id. at ¶ 16.

Plaintiff was also subjected to "regular environmental micro-aggressions from her supervisors, co-workers, and other campus visitors, as well as unfounded judgments from Human Resources regarding her qualifications for positions, coupled with being offered positions with less desirable terms than those given to non-African American employees." Id. at ¶ 17.

Upon returning to work after maternity leave, Plaintiff reported to Defendant that a coworker had a racist picture on the desktop of a shared work computer. Id. at ¶ 18. Three months later, Defendant "wrote up" the employee responsible for the picture, but also "wrote up"

1  Plaintiff for watching a skit on her shared work computer, even though other coworkers were not

2  disciplined for using work computers for personal activities. Id.

3        The retaliation claim is based upon allegations that Defendant subjected Plaintiff to

4  "unwarranted discipline, inequitable application of workplace rules," and comments about

5  Plaintiff's workplace complaints. Id. at ¶ 19. For example, Assistant Director John Loretto

6  ("Loretto") scrutinized Plaintiffs' timesheets and daily operations. Id. Defendant also "tried to

7  push" Plaintiff out of the Campus Safety Department into a newly developed Clery Compliance

8  position. Id. at ¶ 20. Defendant also "threatened" Plaintiff "with reprisals" if Plaintiff continued

9  to report and complain about Defendant's failure to comply with state law regarding reporting

10 crimes. Id. at ¶ 21.

### III. PROCEDURAL BACKGROUND

      On August 14, 2017, the Court entered a Case Management Order ("CMO") that set several deadlines, including: October 14, 2017 deadline for amending the Complaint; August 10, 2018 deadline for discovery; and July 5, 2018 deadline for filing dispositive motions. Dkt. 19. A jury trial is scheduled to commence on October 30, 2018 and to continue through November 16, 2018.

      Defendant deposed Plaintiff on November 8 and 9, 2017. At the conclusion of the deposition, Plaintiff asked Defendant to stipulate to the filing of an amended complaint. Defendant's counsel responded that she would need to see the proposed amended complaint. Approximately six months later, on April 27, 2018, Plaintiff's counsel sent Defendant's counsel a draft of the proposed First Amended Complaint. The proposed First Amended Complaint adds two claims for race and gender harassment and adds several new allegations. See e.g. Proposed Amended Complaint, ¶¶ 8, 12-15, 22. On June 29, 2018, Defendant filed a motion for partial summary judgment on Plaintiff's three disability-related claims and the retaliation claim. The motion for partial summary judgment is scheduled for hearing on September 6, 2018.

### IV. DISCUSSION

      Plaintiff's motion for leave to amend is governed by Federal Rule of Civil Procedure

Case No.: 5:17-cv-02213-EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND COMPLAINT

3

16 and properly construed as a motion to amend the CMO. This is so because the deadline for amending the pleadings has long since expired. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-608 (1992). Under Rule 16, a party seeking to amend a scheduling order must demonstrate sufficient "good cause" for the relief. Fed. R. Civ. Proc. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Diligence on the part of the moving party is the focus of the inquiry. See Johnson, 975 F.2d at 609. If, and only if, the requisite good cause is shown, the court then turns to an examination of the relevant factors under Rule 15. Hood v. Hartford Life & Accident Ins. Co., 567 F. Supp. 2d 1221, 1224 (E.D. Cal. 2008) (quoting Johnson, 975 F.2d at 609 ("If that party was not diligent, the inquiry should end.")).

Here, Plaintiff cannot demonstrate good cause for the belated motion to amend. Plaintiff has not been diligent. Plaintiff initiated this lawsuit in April of 2017. In November of 2017, Plaintiff asked Defendant to stipulate to the filing of an amended complaint. Yet, Plaintiff delayed providing Defendant with the proposed First Amended Complaint until April 27, 2018, and delayed filing the instant motion for leave to amend until June 25, 2018. Plaintiff also delayed taking any discovery until May of 2018. Plaintiff asserts that the delays in the case were due to a staff member's pregnancy and related medical needs. See Plaintiff's Reply, p. 6. Plaintiff, however acknowledges that the medical issues explain the delays only "in part." Id. There is no reasonable explanation for delaying seeking amendment from November 2017 to the present.

Furthermore, the proposed amendments are based on information that Plaintiff had or should have had before filing suit. Among other things, the First Amended Complaint adds allegations that Plaintiff was subjected to a hostile working environment based on her race and gender; that "Plaintiff's claims benefit from the continuing violation doctrine"; that Plaintiff filed workplace complaints for gender discrimination with Beltran; that Plaintiff requested Clery training and three men were sent instead of her; that Plaintiff was denied Rape Aggression training and men were allowed to participate in the training; that Defendant's employees used terms such as "gal" and "hon" to refer to women; and that men were given extra assignments that women

Case No.: 5:17-cv-02213-EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND COMPLAINT
4

were not given. See Proposed Amended Complaint, ¶¶ 8, 12-15, 22. The proposed First Amended Complaint also adds allegations that:

> [Plaintiff] was subjected to offensive and negative stereotypes about African Americans through stereotypical gestures such as neck movements and hand movements. [Plaintiff] was subjected to negative comments about her braided hairstyle. [Plaintiff] suffered unfair discipline due to her race. [Plaintiff] was also not allowed to attend trainings due to her race. Plaintiff's assignments were also race based. Plaintiff was assigned certain job tasks merely because the caller was perceived as African American or a basketball player.

Id. at ¶ 15. As to the retaliation claim, Plaintiff proposes adding the following allegations:

> Consequently, [Plaintiff] had projects, duties and responsibilities taken away from her. [Plaintiff] received less opportunity to interact with and collaborate with University staff and employees. [Plaintiff] was prevented from participating in staff trainings, orientation, and presentations to parents. [Plaintiff] was removed from the Acting Clery Compliance Officer position and her Clery compliance duties. [Plaintiff] went from interim Watch Commander to Assistant Watch Commander. [Plaintiff] was no longer allowed to attend Watch Commander meetings. [Plaintiff] was put in an Interim Clery Compliance Officer position. And [Plaintiff] was prevented from policy writing, previously she was the head policy writer.

Id. at ¶ 22. Plaintiff knew or should have known of the facts and theories of liability outlined above since the inception of this action, and Plaintiff's proffered reasons for delay in seeking leave to amend are unpersuasive. There is no good cause for Plaintiff's belated motion to amend. See In re Western States Wholesale Natural Gas Antitrust Litigation, 715 F.3d 716, 737 (9th Cir. 2013); see also Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994) ("Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.").

Although lack of diligence is a sufficient ground to deny Plaintiff's motion (see Johnson, 975 F.2d at 609), the Court also finds that Defendant would be unduly prejudiced if the proposed amendments were permitted. Defendant has already conducted discovery based upon the allegations in the original Complaint. If the amendments were permitted, Defendant would likely need to take additional depositions, propound additional written discovery, amend its initial disclosures, file a motion to dismiss, and revise its pending summary judgment motion. Allowing

Case No.: 5:17-cv-02213-EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND COMPLAINT
5

the proposed amendments would also negatively impact Defendant's trial preparation and potentially jeopardize the October trial date.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for leave to amend the complaint is DENIED.

**IT IS SO ORDERED.**

Dated: July 19, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:17-cv-02213-EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND COMPLAINT
6